IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| PRINCIPAL LIFE INSURANCE COMPANY, THE PRINCIPAL WELFARE BENEFIT PLAN FOR EMPLOYEES, and THE PRINCIPAL WELFARE BENEFIT PLAN FOR INDIVIDUAL FIELD,<br><br>    Plaintiffs,<br><br>vs.<br><br>CAREMARK PCS HEALTH, L.L.C.,<br><br>    Defendant. | No. 4:14-cv-00077 – JEG<br><br>**O R D E R** |

This matter comes before the Court on Motion to Compel Arbitration, ECF No. 26, by Caremark PCS Health, L.L.C. (Defendant). Plaintiffs Principal Life Insurance Company, the Principal Welfare Benefit Plan for Employees, and the Principal Welfare Benefit Plan for Individual Field (collectively, Plaintiffs) resist. Neither party requested an oral argument on this Motion, and the Court finds that an oral argument is unnecessary for the resolution of this matter. The Motion is fully submitted and ready for disposition.

**I.  BACKGROUND**

Defendant is a vendor of pharmacy benefit management services, which involve management of prescription drug plans for employers offering or sponsoring prescription drug benefit plans. In 2005, the parties entered a contract in which Defendant agreed to provide Plaintiffs with a minimum discount from the average wholesale price for generic drugs. This is known as the Generic Effective Rate (GER). At times, the copayment of a participant in Plaintiffs' drug benefit plans equals or exceeds the retail cost of a prescription drug. This is called a Zero Balance Claim (ZBC). Pharmacies may create ZBCs in order to attract customers. The 2005 contract excluded ZBCs from the calculation of the GER. Plaintiffs contend that a 2011 Pricing

Implementation Document (PID), which relates to the 2005 contract, did not alter the exclusion of ZBCs from the calculation of the GER. Yet, Defendant included the ZBCs in the calculation.

Plaintiffs contend that including the ZBCs in the calculation of the GER was a breach of contract. Plaintiffs further contend that Defendant is liable for equitable fraud and fraud in the inducement because Plaintiffs relied on Defendant's false representations that the 2011 PID would yield Plaintiffs an additional seven percent savings, and it would not affect the GER calculations. Plaintiffs apparently also have similar claims regarding PIDs for 2012 and 2013. Plaintiffs have agreed to arbitrate the 2012 and 2013 claims.

The 2011 PID provides that Plaintiffs "will receive the benefit of the pricing and terms within this PID under the Existing [2005] Agreement . . . through December 31, 2011," and the parties will negotiate a new agreement to take effect on January 1, 2012. Pl.'s Compl. Ex. B. 4, ECF No. 5, 5. The parties did adopt a new agreement, which took effect as scheduled. The 2012 agreement contains the same pricing terms as 2011 PID.

The 2012 contract contains an arbitration clause. In relevant part, the clause provides as follows:

> Any dispute arising out of or relating to this Agreement which is not settled by agreement of the parties within a reasonable time will be settled exclusively in a binding arbitration by a single arbitrator. However, in no event will a dispute involving, or potentially involving, a class of claimants be subject to any mediation or arbitration nor shall either party be prohibited from seeking appropriate equitable relief to enforce its rights under this Agreement. The location of any arbitration proceeding will be in New York, New York. The arbitration will be governed by the Federal Arbitration Act. The arbitrator will be selected and the arbitration conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association (AAA), except that the provisions of this Agreement will control over the AAA rules.

Id. ¶ 13.16. The 2012 contract further provides that it will "be governed by the laws of the state of Iowa, without reference to conflict of law principles." Id. ¶ 13.8.

Principal Life Insurance Company is an Iowa corporation and has its principal place of business is in Des Moines, Iowa. Defendant is a Delaware LLC, and its principal place of business is in Rhode Island.[1] Because there is complete diversity and Plaintiffs have alleged more than $75,000 in damages, the Court has diversity jurisdiction under 28 U.S.C. § 1332.

## II. DISCUSSION

This case presents strong, competing arguments, offered by sophisticated clients and capable counsel. The facts in the record, a course of dealing, and applicable law concerning arbitration require the Court to pursue a disciplined and narrow legal path. This begins with the initial question of venue.

### A. Venue

The arbitration clause at issue provides that the arbitration must occur in New York. The Eighth Circuit has not addressed whether the Federal Arbitration Act (FAA) allows a district court to compel arbitration in a district other than the one in which the motion was filed. See Nat'l Indem. Co. v. Transatlantic Reinsurance Co., No. 8:14-CV-74, 2014 WL 1309091, at *6 (D. Neb. Mar. 31, 2014). Section 4 of the FAA provides as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. *The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.*

9 U.S.C § 4 (2012) (emphasis added).

---

[1] Defendant is a wholly-owned subsidiary of CaremarkPCS, L.L.C., which is a wholly owned subsidiary of Caremark Rx, LLC, which is a wholly-owned subsidiary of CVS Pharmacy, Inc., which is wholly owned by Caremark Corporation, a publicly-traded Delaware Corporation.

Citing the italicized language of section 4, several circuits have held that venue of a motion to compel is only proper where the arbitration is to take place. Haber v. Biomet, Inc., 578 F.3d 553, 558 (7th Cir. 2009) ("When an arbitration clause in a contract includes a forum selection clause, 'only the district court in that forum can issue a § 4 order compelling arbitration. Otherwise, the clause of § 4 mandating that the arbitration and the order to compel issue from the same district would be meaningless.'" (quoting Merrill Lynch, Pierce, Fenner & Smith v. Lauer, 49 F.3d 323, 327 (7th Cir. 1995)); Ansari v. Qwest Commc'ns Corp., 414 F.3d 1214, 1219-20 (10th Cir. 2005) (discussing three views on proper venue under Section 4 of the FAA and noting "th[e] majority view holds that where the parties agreed to arbitrate in a particular forum only a district court in that forum has authority to compel arbitration under § 4"); Inland Bulk Transfer Co. v. Cummins Engine Co., 332 F.3d 1007, 1018 (6th Cir. 2003) ("[T]he Federal Arbitration Act prevents federal courts from compelling arbitration outside of their own district."). However, the Ninth Circuit has reached a different conclusion. Textile Unlimited, Inc. v. A..BMH & Co., 240 F.3d 781, 785 (9th Cir. 2001) (holding that Section 4 of the FAA "only confines the *arbitration* to the district in which the petition to compel is filed. It does not require that the petition be filed where the contract specified that arbitration should occur."). The District of Nebraska recently agreed with the majority view and held that when "an arbitration provision contains a forum selection clause, the only proper venue in which to compel arbitration is the venue encompassing that forum." Nat'l Indem. Co., 2014 WL 1309091, at *7.

Although Defendant noted this issue of venue in passing,[2] neither party has expressly contested the propriety of venue here. Accordingly, the Court finds that the parties have waived

---

[2] Caremark raises this issue in connection with its intention to file a counterclaim relating to years 2012 and 2013, and noting it may be required to file an arbitration petition in New York, pursuant to Section 4 of the FAA. Given the posture of this action, and in an effort to avoid unnecessary litigation expense to the parties, this Court will not seek to decide an issue not expressly raised by the parties, and which does not impact the Court's jurisdiction. See text at pp. 4-5, *infra*.

4

objections to venue and consented to the Court's consideration of the merits of Defendant's motion to compel. See Nat'l Indem. Co., 2014 WL 1309091, at *8 (suggesting that Section 4 concerns venue, not subject matter jurisdiction, and a district court may compel arbitration in another district if neither party raises the issue of venue (citing 1mage Software, Inc. v. Reynolds & Reynolds Co., 459 F.3d 1044, 1052-55 (10th Cir. 2006))); Sanchez v. Nitro-Lift Techs., L.L.C., 12-7046, 2014 WL 3882543 (10th Cir. Aug. 8, 2014); see also Northport Health Servs. of Ark. LLC v. Rutherford, 605 F.3d 483, 486 (8th Cir. 2010) ("[T]he FAA 'bestow[s] no federal jurisdiction but rather requir[es] an independent jurisdictional basis.'" (quoting Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576 (2008))).

### B. Motion to Compel Arbitration

Defendant argues that the FAA requires the Court to compel arbitration because the 2012 contract contains a valid arbitration clause requiring arbitration of "[a]ny dispute arising out of or relating to this Agreement . . . ." Defendant contends that the Court should not determine whether the arbitration clause in the 2012 contract extends to the dispute over the 2011 PID because the parties elected in the 2012 contract to refer questions of the scope of the arbitration clause to the arbitrator. Defendant reasons that the parties agreed to apply the Commercial Rules of the American Arbitration Association (AAA), which purport to vest the arbitrator with the power to determine his or her own jurisdiction.[3]

Moreover, Defendant argues that if the Court does decide to determine the scope of the arbitration clause, it must compel arbitration because the present dispute between the parties "relates to" the 2012 contract. Defendant further contends that courts construe arbitration clauses liberally and refer matters to arbitration if they "simply 'touch matters covered by' the

---

[3] At the time the 2012 contract took effect, the relevant AAA rules provided, "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Commercial Arbitration R. 7 (2009).

5

arbitration provision." 3M Co. v. Amtex Sec., Inc., 542 F.3d 1193 (8th Cir. 2008) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625 n.13 (1985)). Defendant asserts that the 2012 contract relates to the 2011 PID because the two documents have the same pricing terms. In addition, Defendant fears that allowing the litigation to proceed on Plaintiffs' 2011 claims might have claim or issue preclusive effect during a later arbitration of Plaintiffs' 2012 and 2013 claims. Defendant submits that this possibility indicates that the claims are related.

Plaintiffs assert that the Court's only task is to determine whether the parties agreed to arbitrate the current dispute. Neither the 2011 PID nor the 2005 contract contain an arbitration clause. Accordingly, Plaintiffs contend that they did not agree to arbitrate disputes regarding these agreements and that should end the inquiry.

In addition, Plaintiffs present several cases which have refused to apply arbitration clauses to previously executed contracts.[4] Plaintiffs assert that Defendant failed to provide any authority in support of its proposed construction of the arbitration clause. Furthermore, Plaintiffs

---

[4] Plaintiffs cite several cases in support of their position. See, e.g., Thomas v. Carnival Corp., 573 F.3d 1113, 1118 (11th Cir. 2009) (holding that a 2005 employment agreement did not apply to a 2004 slip and fall during the plaintiff's employment because it had "no connection to" the new agreement); Sec. Watch, Inc. v. Sentinel Sys., Inc., 176 F.3d 369, 372 (6th Cir. 1999) (holding that a 1994 annual agreement requiring arbitration of "all disputes, controversies or claims . . . arising out of or relating to the Products furnished pursuant to this Agreement" did not apply to previous annual contracts between the parties). In addition, in George Washington University v. Scott, 711 A.2d 1257, 1258 (D.C. 1998), the court refused to compel arbitration of medical malpractice and wrongful death claims arising out of care provided in December 1994. The court rejected the health maintenance organization's argument that – even though the 1995 agreement took effect automatically without negotiation – an arbitration clause in the 1995 health plan policy applied to disputes arising before the policy's effective date. Id.; see also Choice Sec. Sys., Inc. v. AT&T Corp. & Lucent Techs., No. 97-1774, 1998 WL 153254 (1st Cir. Feb. 25, 1998) (holding an arbitration clause in a 1994 annual agreement did not apply to disputes regarding pre-1994 contracts as "[t]he parties to a dealership contract covering a discrete term may have every reason to make such codes of business conduct applicable and enforceable during the prescribed contract term without ever having contemplated their retroactive application to the already completed dealer performance rendered under earlier dealership contracts since displaced" (emphasis omitted)).

distinguish Pennzoil Exploration v. Ramco Energy Ltd., 139 F.3d 1061 (5th Cir. 1998), which applied an arbitration clause in a 1994 Joint Operating Agreement (JOA) to a dispute that the plaintiff alleged concerned a 1993 letter agreement. The court determined that the JOA's broad arbitration clause applied to the parties' dispute even if it did not "arise out of the JOA" because the dispute was "related to" the JOA. Id. at 1068. The court reasoned that the parties had a "series of interrelated agreements," which had the same "overriding goal," and "the agreements themselves evidence[d] their inter-relationship." Id. Plaintiffs assert these factors are not present in this case.[5]

Moreover, Plaintiffs contend that the 2012 contract evidences that it only applies prospectively because the contract refers to services "to be provided." 2012 contract 1, ECF No. 26-3. In addition, it contains an integration clause stating that the contract "supersedes all prior oral or written" agreements between the parties. Id. at 21.

Finally, Plaintiffs argue that it is illogical to apply the 2012 contract's arbitration clause to the current dispute because the 2011 PID and 2005 contract will govern the merits of the parties' dispute. Plaintiffs explain that Defendant's performance is evaluated on an annual basis and the present dispute does not implicate the 2012 contract. For that reason, Plaintiffs assert that bringing the 2011 PID dispute before this Court will not generate duplicative litigation if Plaintiffs later pursue its claims relating to 2012 and 2013.

This Court begins with the fundamental principal that "arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986) (quoting

---

[5] Defendant contends that the Pennzoil factors are present in this case as the 2011 PID and 2012 contract have the same overriding goal, and the 2011 PID calls for the parties to negotiate a new agreement to take effect in 2012.

United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)).

"Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must give effect to the contractual rights and expectations of the parties. In this endeavor, as with any other contract, the parties' intentions control." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 682 (2010) (citations and quotation marks omitted).

In considering a motion to compel arbitration, this Court must apply a two-part test. United Steelworkers of Am., AFL-CIO-CLC v. Duluth Clinic, Ltd., 413 F.3d 786, 788 (8th Cir. 2005). The Court "must first consider whether a valid agreement to arbitrate exists. If a valid agreement exists, [the Court] then consider[s] the scope of the agreement." Id. (quoting United Steelworkers of Am., AFL-CIO-CLC, Local No. 164 v. Titan Tire Corp., 204 F.3d 858, 860 (8th Cir. 2000)); see also Neb. Mach. Co. v. Cargotec Solutions, LLC, No. 13-2753, 2014 WL 3896179 (8th Cir. Aug. 7, 2014).

"Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." AT & T Techs., Inc., 475 U.S. at 649. In the Eighth Circuit, an "arbitration provision's incorporation of the AAA Rules . . . constitutes a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator." Fallo v. High-Tech Inst., 559 F.3d 874, 878 (8th Cir. 2009). However, the court must decide the "threshold question . . . [of] whether the arbitration agreement itself is valid." Neb. Mach. Co., 2014 WL 3896179, *3 n.2.[6]

---

[6] In Nebraska Machinery Co., Cargotec sought to arbitrate its request that Nebraska Machinery Company (NMC) indemnify it against claims of a unsatisfied customer. Neb. Mach. Co., 2014 WL 3896179, *2. The parties disputed whether NMC received a purchase order containing an arbitration clause from Cargotec. Id. at *1. The Circuit rejected Cargotec's argument that the incorporation of the AAA rules in the disputed arbitration provision rendered determination of the existence of the arbitration agreement to the arbitrator. Id. at *3 n.2. The court

8

In this case the parties do not contest that they have an agreement to arbitrate some disputes. The 2012 contract clearly contains a valid arbitration agreement. This resolves the first step of the Court's inquiry. See Duluth Clinic, Ltd., 413 F.3d at 788.

The Court cannot reach the second step and determine whether the arbitration agreement in the 2012 contract applies to this dispute. The incorporation of the AAA rules demonstrates the intent of the parties, who are both highly sophisticated and well represented, to defer that question to an arbitrator. See Fallo, 559 F.3d at 878. Plaintiffs assert that the Court should deny Defendant's motion because Plaintiffs did not agree to arbitrate disputes relating to the 2011 PID. Resolving that issue requires a determination of the scope of the "relating to the Agreement" language in the 2012 Agreement, which task the structure entered by the parties and controlling law reserves to an arbitrator. Under the unique circumstances of this case, the Court must grant Defendant's motion.

"The FAA generally requires a federal district court to stay an action pending an arbitration, rather than to dismiss it. *See* 9 U.S.C. § 3." Green v. SuperShuttle Intern., Inc., 653 F.3d 766, 769 (8th Cir. 2011). Because under the circumstances of this case contested issues may remain following arbitration, the Court will stay this action pending completion of the arbitration, rather than dismiss. See Green, 653 F.3d at 770.

---

explained, "Cargotec's argument puts the cart before the horse, as it presumes the arbitration provision formed part of the contract at issue." Id.

Nebraska Machinery Co. is distinguishable from this case because there is no factual dispute here that an enforceable agreement between the parties contains an arbitration clause. Moreover, an arbitration clause need not be part of the particular contract at issue to subject disputes regarding that contract to arbitration. See Fleet Tire Serv. v. Oliver Rubber, 118 F.3d 619 (8th Cir. 1997) (explaining that a broad arbitration clause may reach "collateral disputes that relate to the agreement containing the clause").

9

## II. CONCLUSION

For the reasons stated, Defendant's Motion to Compel Arbitration, ECF No. 26, must be **granted**. The above-entitled action is **stayed** pending arbitration. The parties are directed to make a status report to the Court no later than six months from the date of this Order, or at such earlier time as the arbitration is completed.

**IT IS SO ORDERED.**

Dated this 9th day of October, 2014.

JAMES E. GRITZNER, Chief Judge
U.S. DISTRICT COURT